J. Murray Zeigler, AZ Bar #012427
**ZEIGLER LAW GROUP, PLC**
229 W. La Vieve Lane
Tempe, AZ 85284-3022
Telephone: (480) 888-6269
Facsimile: (888) 457-0409
murray@zeiglerlawgroup.com
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| MICHELLE LEE WAGNER, | **Case No. 2-13-bk-19796-MCW** |
| Debtor. | **Adversary No. 2-14-ap-00149-MCW** |
| LAWRENCE E. PRITCHARD, as trustee of the PRITCHARD CHARITABLE REMAINDER UNITRUST DATED DECEMBER 29, 1994, | **DEBTOR'S RESPONSE TO PLAINTIFF'S MOTION FOR AN ORDER COMPELLING DISCOVERY AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37** |
| Plaintiff, | **Hearing Date:** September 25, 2014<br>**Hearing Time:** 1:30 p.m.<br>**Location:** 230 N. First Ave, Courtroom #702, 7th Floor, Phoenix, AZ 85003 |
| v. | |
| MICHELLE LEE WAGNER, | |
| Defendant. | |

Debtor Michelle Lee Wagner ("Wagner"), through her undersigned counsel, responds and objects to the Motion for an Order Compelling Discovery and for Sanctions Pursuant to Fed. R. Civ. P. 37 ("Motion to Compel") filed by creditor Lawrence E. Pritchard, as trustee of the Pritchard Charitable Remainder Unitrust dated December 29, 1994 ("Pritchard") for the reasons that the Debtor has fully responded to Pritchard's discovery requests to the best of her ability and the Motion was brought for the sole purpose of harassing the Debtor and causing unnecessary and vexatious litigation. Additionally, Debtor requests that the Court enter monetary

sanctions against Pritchard and his counsel in an amount sufficient to reimburse Wagner for her attorney fees and costs incurred in defending against Pritchard's baseless Motion to Compel. Wagner's Response and Objection is more fully supported in the following Memorandum of Points and Authorities, the files in the instant adversary case, the related administrative case 2-13-bk-19796-MCW and the exhibits attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES
### PRELIMINARY STATEMENT

In this latest filing, Pritchard seeks sanctions against Wagner and the undersigned for Wagner's alleged failure to respond "substantively" to Pritchard's latest round of discovery requests. Pritchard fails to acknowledge that Wagner fully, and timely, responded to all of Pritchard's discovery requests in both the administrative bankruptcy case and the adversary proceeding. Moreover, Pritchard fails to acknowledge that Wagner has also offered to provide additional responses, if necessary, upon Pritchard's clarification of his requests.

Let there be no mistake regarding the basis and motivation of Pritchard's actions in these bankruptcy proceedings against Wagner. Pritchard filed the instant adversary proceeding for the sole purpose of harassing Wagner and forcing her to incur substantial fees and costs defending against Pritchard's vexatious litigation. Absolutely no basis exists for Pritchard's allegations of fraudulent actions or behavior on the part of Wagner. Similarly, the filing of Pritchard's Motion to Compel was filed in direct contravention of the facts and events that have occurred since the filing of Wagner's bankruptcy case.

Pritchard's true motivation in filing pleadings designed to accomplish nothing more than to harass Wagner have already been amply demonstrated. The Court will recall the prior "Motion for Order Clarifying that § 362 Does Not Bar Action Against Debtor to Recover Debtor's Post-Petition Receipt of Fraudulent Transfers," ("Motion

to Clarify") filed by Pritchard through his counsel, Cody Jess (hereinafter "Jess"). The Motion to Clarify required the drafting of extensive pleadings by counsel for Pritchard, Wagner and counsel for the Chapter 7 trustee. Responses were filed. Replies were filed after that. A hearing was set and the Court's time and resources were taxed in deciding the issues. And what occurred as a result of the decision and order? Nothing. Absolutely nothing. Pritchard was well aware at the time of filing the Motion to Clarify no basis existed for his allegations of "fraudulent transfers" in the Arizona state courts and no purpose was served by wasting this Court's time and resources. It did, however, succeed in further harassing Wagner and forcing her to needlessly expend additional money in defending against a useless proceeding. Pritchard is a very wealthy individual and has considerably more financial resources to expend on protracted litigation. It is Pritchard's intent to harm Wagner financially, professionally and emotionally to the greatest extent possible.

Pritchard's instant Motion to Compel is nothing more than another concerted effort to tax Wagner's limited resources and furthering his harassment proclivities. Wagner implores the Court to stop Pritchard's ongoing behavior.

## BACKGROUND

**A. Relevant Facts:**

Although Pritchard has, yet again, made senseless, unsupported and irrelevant allegations to the issues being addressed in his Motion to Compel ("Debtor and CreCon. . . solicited a $400,000 loan from the Trust. . .") ("It was represented to the Trust that the Loan would be secured by two commercial office condominiums."), Wagner will limit her "Relevant Facts" to those involving the instant Motion to Compel.

1. On December 18, 2013, Pritchard, through his counsel, filed an Application for 2004 Exam and Production of Documents. The Application was subsequently granted. On January 9, 2014, Wagner responded to the Request for

Production of Documents. Wagner provided Pritchard with copies of the following documents as requested;

    a.    Wagner's 2009 - 2012 Tax Returns together with all schedules and worksheets
    b.    Complete copies of Wagner's personal and business bank accounts for the preceding 24 months.
    c.    All documents "relating" to Creative Consulting (Wagner's business).
    d.    All documents valuing Wagner's interest in Creative Consulting.
    e.    All documents relating to any transfer of Wagner's real or personal property for the preceding 7 years.
    f.    Wagner's Decree of Dissolution of Marriage.
    g.    All relating to any transfer of Creative Consulting's real or personal property for the preceding 7 years.

2.    On February 13, 2014, Wagner attended a Rule 2004 exam noticed and conducted by Jess. Wagner responded to all of Jess' questions fully, truthfully and accurately. During the examination, Jess addressed the actual meaning of several of his prior unclear Requests for Production of Documents. Following the examination, Wagner supplemented her earlier disclosures and provided Jess with copies of;

    a.    Deed of Trust dated May 16, 2005.
    b.    Promissory Note Secured by Deed of Trust dated May 16, 2005.
    c.    Deed of Trust Assignment of Rents dated June 9, 2008.
    d.    Extension of Deed of Trust and Note dated July 27, 2011.
    e.    Notice of Trustee's Sale.
    f.    Trustees Deed dated January 18, 2013.
    g.    Wagner's Personal Financial Statement dated April 26, 2013.

Although Pritchard demanded copies of these documents, it is uncontestable that he had the originals of each document in his possession prior to demanding copies from Wagner.

3.    On March 18, 2014, Jill Ford, Chapter 7 Trustee, through her counsel, filed an Application for 2004 Exam and Production of Documents. The Application was subsequently granted. On April 3, 2014, Wagner responded to the Request for

Production of Documents. Wagner provided the Trustee's counsel *and courtesy copies to Jess and Pritchard* with;

    a. Copies of Fidelity bank account statements for 2 years.
    b. Copy of bank account statement for account #7293 for July 2013.
    c. Copies of all checks over $1,000 for 2 years.
    d. Copies of all personal bank accounts for postpetition periods.
    e. Copies written agreements between Wagner, CreCon and Great American Title.
    f. Copies written agreements between Wagner, CreCon and Crown Capital.
    g. An accounting of all funds/commissions paid to Fernando Sam-Sin pursuant to the divorce decree for past 6 years.
    h. Copy Wagner's extension for filing 2013 tax returns.
    i. Copies of the signed year 2012 federal and state tax returns.
    j. An accounting of all funds paid to Scott Powers.
    k. Copies of all agreements between Debtor, CreCon and Scott Powers. Explanation of verbal agreement between the parties.
    l. Copies of all 1099s (or W-2s) issued to Scott Powers.
    m. Copies of all loan documentation, checks, invoices, evidencing the payments made by David Wagner to Wagner, or to the Washington Mutual line of credit.
    n. Copies appraisals CreCon obtained for purposes of the divorce.
    o. Copies of all documents used to value the business, the logo, and the domain name.
    p. Status of ownership the 2007 Land Rover Wagner was awarded in the divorce.
    q. Status of ownership of the 2007 VIP trailer.
    r. Status of ownership of the 2011 Mercedes.
    s. Status of ownership of the 2001 Porsche
    t. Copies of AMEX account statements for 2 years.
    u. Copy of the lease for CreCon business premises.
    v. Itemized list of all assets of CreCon with a valuation.
    w. Copies of CreCon Balance Sheet for 2 years.
    x. Copies of CreCon Profit and Loss Statements for 2 years.
    y. General Ledger for 2 years.
    z. Copies of all commissions received by Wagner postpetition.
    aa. Copy of the commission schedule between Wagner and Crown Capital Securities, L.P. Explanation of commission schedule.

  bb. Copies of all assignments of CreCon assets, equipment, furniture, machinery, etc. to third parties for the last four years.
  cc. Copies statements/pay stubs for commissions due as of the petition date and received post-petition from Crown Capital Securities, L.P. and from Great American Title Agency, Inc.
  dd. Proof of payment of 2014 tax liabilities.
  ee. Copy of commission from Great Western Title for October 2013.
  ff. Copy of Alerus bank account closing certificate.
  gg. Copies of Mid-First Bank savings account statements.
  hh. Copy of Orpheum Condo Declaration of Covenants and Restrictions.
  ii. Copy of Orpheum Partners Operating Agreement
  jj. Copies of Orpheum Partners Schedule K1s issued to Wagner for 3 years.

  4. On April 17, 2014, Wagner attended a Rule 2004 exam conducted by counsel for the Trustee. Wagner responded to all of counsel's questions fully, accurately and truthfully. Both Pritchard and Jess attended the examination.

  5. On May 22, 2014, Wagner served on Pritchard her Initial Disclosure Pursuant to Rule 7026. The disclosure included a complete list of all documents Wagner intends to use at trial and a complete list of all witnesses Wagner intends to call at trial. Copies of all documents had previously been sent to Jess. The disclosure also included a summary of the testimony of each witness together with the contact information for each witness.

  6. On July 11, 2014, Pritchard served on Wagner additional Non-Uniform Interrogatories, Requests for Admission and Requests for Production of Documents.

  7. On August 11, 2014 Wagner responded fully, completely and accurately to Pritchard's additional Non-Uniform Interrogatories, Requests for Admission and Requests for Production of Documents; all of which are the subject of the instant Motion to Compel.

In re Wagner    Response to Motion to Compel - 6    Case No. 2-13-bk-19796-MCW
Adversary No. 2-14-ap-00149-MCW

Case 2:14-ap-00149-MCW   Doc 30   Filed 09/19/14   Entered 09/19/14 19:49:09   Desc
Main Document   Page 6 of 17

## LAW AND ARGUMENT

**A. Wagner's Responses to Pritchard's Requests for Admission.**

Pritchard, through Jess, served on Wagner some 45 requests for admission pursuant to Rule 36, Fed. R. Civ. P. (Bankr. R. P. 7036). As noted above, Wagner timely responded to each of the requests. Although Jess fails to specify exactly which responses he objects to, eleven of the 45 requests were admitted by Wagner and are, presumably, not part of the instant Motion to Compel. Jess complains that some, most or all of the remaining requests, "`. . . needed to be explained and supported by something more than a general denial and a general reference to scads of documents, as requested in the Trust's Non-Uniform Interrogatories.`" As an example of Wagner's alleged failure to adequately respond to the Requests for Admission, Jess specifically references Request for Admission #1. Said Request stated;

```
    1. Admit that CreCon, LLC does business as Creative Consulting.
        Admit _____                    Deny _____
```

As CreCon, LLC does not do business as Creative Consulting, Wagner properly denied the request. Jess would not accept Wagner's denial as being "responsive."

Rule 36, Fed. R. Civ. P. governs Requests for Admission. Rule 36 states, in pertinent part;

> (4) Answer. If a matter is not admitted, **the answer must specifically deny it** or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. (Emphasis supplied.)

Wagner clearly fulfilled her obligation with regard to the Rule. She specifically denied the request since the request is not true. The entire request is untrue therefore no further explanation was needed or warranted.

Nevertheless, Jess objected to the response as being unresponsive and contrary to Wagner's previous responses to Jess' earlier discovery demands. Apparently Wagner's response was not what Jess wanted to hear or admit. Jess launched a torrent of threatening emails at the undersigned making wild accusations and demanded that Wagner respond in some fashion other than the truth. As Jess points out in his Motion to Compel, the undersigned patiently attempted to explain to Jess that the response was factual and complete *as of the date of the response*. Jess insisted that the response conflicted with Wagner's previous testimony and admissions in Pritchard's state court lawsuit and was therefore somehow "non-responsive," "wholly evasive" and "incomplete." Jess did not, and cannot explain exactly how Wagner's response is "non-responsive," "wholly evasive" and "incomplete" when it truthfully responded to Jess's request in its entirety.

Wagner verified that her responses to Jess' discovery requests were complete and accurate and the undersigned acknowledged the responses as well. Rule 26(g), Fed. R. Civ. P. (Bankr. R. P. 7026), addresses the verification of discovery responses. The Rule states, in pertinent part;

> (1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and **every discovery** request, **response**, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. **By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:**
> (A) with respect to a disclosure, **it is complete and correct <u>as of the time it is made;</u>** (Emphasis supplied.)

As the undersigned explained to Jess, responses to questions may differ over time based on the facts and circumstances existing at the time the question is asked. In this instance, CreCon *used* to do business as Creative Consulting but no longer *does* business as Creative Consulting. Wagner's responses to the same question differed based on the facts existing at the time the question was asked. No rule of procedure

In re Wagner                    Response to Motion to Compel - 8             Case No. 2-13-bk-19796-MCW
                                                                              Adversary No. 2-14-ap-00149-MCW

Case 2:14-ap-00149-MCW    Doc 30    Filed 09/19/14    Entered 09/19/14 19:49:09    Desc
                         Main Document    Page 8 of 17

requires Wagner to explain the difference in responses *unless she is specifically asked to explain the reason for the difference in responses.* Although this was explained to Jess and an opportunity was given to Jess to refine the question to specify exactly what he was requesting, he refused to amend or supplement his questions. Instead, Jess chose to file and pursue the instant Motion to Compel without further attempts to resolve the issues.

In attempting to educate Jess as to why Wagner's responses to the same question differed, the undersigned stated:

> The "first" RFA from state court and the response stated:
>
> ```
> 1. Admit that Michelle Wagner has done, or IS doing
> business as, Creative Consulting, L.L.C.
> Denied. Further answering, Defendants state that
> Creative Consulting is the dba of CreCon, LLC.
> ```
>
> The "second" RFA and my client's response stated:
>
> ```
> 1. Admit that CreCon, LLC does business as Creative
> Consulting.
> Admit  _____                              Deny _X__
> ```
>
> Both were denied. I can't speak to the responses from the state court action; I wasn't involved in that. One response was from November 2013 and the other was from August 2014. Things change. That doesn't mean they are inconsistent or untruthful answers. In THIS case, you assert, "CreCon, LLC does business as Creative Consulting." The answer is NO. At the present moment (does), CreCon isn't doing business at all. You KNOW CreCon shut down all business operations and closed its bank accounts. You noted that fact in your own pleadings. Moreover, you noted the closing of the CreCon website.
>
> Your RPD states, "Produce copies of all documents you rely upon in support of your answers." We have done that. It doesn't state, "reproduce copies of all documents" or "point exactly where in each document you are referring to" and we would object if it did. We fully complied with the RPD as required by the rules.

Similarly, your NUIs demand that we state, "all facts" and produce, "all documents." How did we not do that? The facts are contained in the documents. The documents have been produced. There is no requirement for us to "reproduce" the facts and the documents. You have what you asked for.

Cody, if you are set on wasting your client's money and pursuing a baseless motion for sanctions, I can't stop you. **All I can say is I am ready to address any issues you may have with the discovery responses as long as you tell me what the issues are.** I would request though that you refrain from asking questions which have already been answered and that you already have the response. That is just further harassing my client. (Emphasis supplied.)

Such has been the case in all of the undersigned's dealings with Jess regarding the discovery requests. The undersigned has almost literally bent over backwards in an effort to address any legitimate requests for information Jess may have or to address any perceived deficiencies in Wagner's responses. Jess continues to refuse to address the actual requests he served on Wagner.

Two issues are particularly egregious regarding Jess' behavior in the discovery process and his approach to the overall prosecution of this case. The first is Jess' characterization of the undersigned's unwillingness to address or resolve any real or perceived deficiencies in discovery responses. In his Motion to Compel, Jess stated, "Undersigned counsel has, in good faith, conferred with the Debtor's counsel in an effort to obtain complete responses to the Discovery without this Court's intervention." Clearly this is an incorrect statement. As described above, the undersigned attempted to resolve any differences and avoid needless litigation. The undersigned has offered to meet and/or discuss (in writing to avoid the inevitable he said/he said as has occurred in the past) Jess' perceived deficiencies in discovery responses. However, Jess has intentionally made resolution of these issues impossible. Wagner cannot amend or supplement her responses, if warranted, without knowing exactly what information is being sought. Generalized questions and requests for information asking for "all" or "everything" or "ever" can only produce generalized responses. Jess has chosen to avoid addressing these issues

and instead rushed to the Court seeking sanctions against Wagner and the undersigned.

The second issue is Jess' continued harassment of Wagner, presumably at Pritchard's direction. Jess cites case law implying he cannot adequately proceed in the adversary proceeding without additional information from Wagner. "The disputed interrogatories, if answered directly, would provide defendants the ability to prepare their case and would eliminate surprise. Without further clarification, defendants are unable to determine fully plaintiff's claims and the evidence on which he relies to support these claims." *Agyeman v. Bohl*, 1:99CV5913WMW PC, 2008 WL 4104313, at *2 (E.D. Cal. Sept. 3, 2008) (citing *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958))." In this case however, Jess admits that he not only asked the exact same question once, or twice; he asked the same question *three* times! Jess compares Wagner's responses to the CreCon question he asked first in the state court litigation, second during the 2004 examination he conducted on Wagner and third in his most recent Requests for Admissions. This fact is illustrative of Jess and Pritchard's continued harassment of Wagner. Pritchard has the financial resources to engage in such continued "gamesmanship" and abuse of the discovery process, Wagner does not. Jess cannot under any circumstances claim surprise or an inability to adequately prepare his "case" given the depth and breadth of information previously supplied by Wagner.

**B. Wagner's Responses to Pritchard's Non-Uniform Interrogatories and Requests for Production of Documents.**

Wagner's responses to Pritchard's Non-Uniform Interrogatories and Request for Production of Documents are based on her responses to the Requests for Admission and dovetail with the issues addressed above. Again, Jess fails to request identifiable, relevant information and documents. Rather, he makes only innocuous and generalized requests for information and documents that span a wide spectrum of issues over a very long period of time. Jess demands that Wagner identify "all

facts" and produce "all documents" relating to a particular subject. In responding to Jess' generalized requests, the undersigned stated, "Similarly, your NUIs demand that we state, "all facts" and produce, "all documents." How did we not do that? The facts are contained in the documents. The documents have been produced."

As Jess is well aware, the relationship between Wagner and Pritchard spans some 23 years. Pritchard's step-daughter is Wagner's good friend. Wagner was treated as a member of Pritchard's family for many years. To adequately respond to a vague demand to produce documents and information that span this entire time period is simply impossible to do. As was the case with Jess' Requests for Admission, the undersigned attempted to resolve any issues regarding responses if Jess would reasonably identify what information he was seeking and limit his requests to time periods relevant to the instant proceedings. Jess continues to refuse to do so.

In addressing alleged deficiencies in Wagner's responses to the non-uniform interrogatories, Jess states he sent the undersigned, "… a redacted response to discovery in another matter in an attempt to educate Mr. Zeigler as to how to properly answer the Trust's Discovery under the applicable rules."[1] The undersigned took the time to respond to Jess' educational materials and point out the fundamental differences between the model request based on a different proceeding and the actual request sent by Jess in the instant matter. The undersigned pointed out to Jess;

Example NUI:

Regarding your claim that ". . . Cynthia was in the process of selling her interests in some hotel partnerships and the proceeds from those sales would be used to clear up any unpaid loans to shareholders. The hotels were sold for over $3,000,000. The proceeds of the sale were then loaned to Varsity Gold and

---

[1] Jess's actions are worth a second look. Instead of merely clarifying his original request, Jess chose instead to locate discovery from an unrelated lawsuit, redact it and make whatever other changes he choose to make and attempt to pass it off as being similar to the vague inquiry he had made in the instant proceeding.

subsequently applied to the outstanding balance of all shareholder loans." See Defendants'/Counterclaimants' Initial Rule 26.1 Disclosure Statement ("Defendants' Initial Disclosure Statement"), 2:19-3:3. Please identify:

(a) The referenced hotel partnership entities in which Cynthia held an interest. See Introductory Instructions ¶ 5 above.

(b) The nature and extent of Cynthia's interest in each of the referenced hotel partnership entitles.

(c) For each of the referenced hotel partnership entities in which Cynthia held an interest, identify when Cynthia's interest was sold, to whom it was sold, and the amount of proceeds received from the sale.

(d) All facts and documents that support your claim that the proceeds from the sale(s) were loaned to Varsity Gold, including, but not limited to, any documentation memorializing the alleged loan(s).

(e) All facts and documents that support your claim that the proceeds from the sale(s) of Cynthia's interest in the referenced hotel partnership entities were applied to the outstanding balance of all shareholder loans.

(f) Each of the "shareholder loans" to which the proceeds from the sale(s) of Cynthia's interest in the referenced hotel partnership entities were applied, when said proceeds were applied to each shareholder loan, and in what amount.

Now THERE is an example of drafting clarity. It quotes the exact language that the question relates to and states exactly what is being sought. You obviously did not draft them. Compare this model NUI to what you asked:

Identify and set forth with specificity: (1) all facts upon which you rely in support of each and every denial set forth in your Answer to the Complaint; (2) all documents upon which you rely in support of each and every denial set forth in your Answer to the Complaint;

(3) all facts upon which you rely in support of each and every
affirmative defense set forth in your Answer to the Complaint; (4)
all documents upon which you rely in support of each and every
affirmative defense set forth in your Answer to the Complaint; (5)
all witnesses and the substance of those witnesses' testimony, upon
which you intended to call in support of each and every denial set
forth in your Answer to the Complaint; and (6) all witnesses, and
the substance of those witnesses' testimony, upon which you
intended to call in support of each and every affirmative defense
set forth in your Answer to the Complaint.

You do nothing but ask for "all" and "each and every." Fine. That
is your prerogative. But, the response will be here is "all" and "each
and every." "All" and "each and every" relate to all allegations, all
responses, all statements, all documents, all witnesses and each and
every other thing I can think of. Given your perpetual propensity
for hyper-technical questioning and interpretation, we cannot
possibly hope to answer your "all" and "each and every" questions
and demands with anything other than "here is all" and "here is
each and every."

**C. Legal Support for Jess' Allegations and Request for Relief is Non-Existent.**

Apparently seeking to support his arguments, Jess cites a laundry list of cases dealing with discovery and discovery responses. None of the cases cited by Jess are directly relevant to the issues involved in the instant proceeding or were decided under the current version of the Federal Rules of Civil Procedure. Other than claiming the undersigned is engaging in "gamesmanship" and asserting that gamesmanship cannot be used to avoid disclosures, facts that are well known, Jess fails to explain how Wagner's responses or the undersigned's attempts to resolve the issues equate to "gamesmanship." No attempt has been made to engage in "gamesmanship," at least on the part of Wagner. Wagner has made no attempt to avoid disclosures or respond to requests for information. The history of her participation in the state court case, the bankruptcy case and the instant adversary proceeding are clear indicators of her commitment to adhere to the rules. Jess' allegation is laughable given the multitude of documents previously disclosed by

Wagner, the hours of deposition testimony she has endured and the mandatory disclosures she has made in advance of trial. Wagner has disclosed everything anyone has requested from her and everything that exists to disclose. As Jess admits in his Motion to Compel, Wagner has even disclosed the same information on multiple occasions pursuant to Jess' multiple requests for the same information.

If a party fails to cooperate in discovery, the opposing party may file a motion to compel pursuant to Rule 37. Fed. R. Civ. P. 37(a)(1). Rule 37 states that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the opposing party "fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. However, prior to moving to compel, the moving party must certify that the movant has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). While Jess has made such a certification, the certification is incorrect. Jess has engaged in multiple conversations with the undersigned but has refused to address the substance of his requests for information and the deficiencies in those requests. To that extent, Jess' refusal to address the issues with his requests equates to no attempt to resolve the issues at all prior to filing his Motion to Compel. Jess has treated the requirement to confer in good faith as a prerequisite to the filing of his Motion to Compel rather than an opportunity to resolve the issues without court intervention.

## CONCLUSION

Pritchard served on Wagner Requests for Admission, Non-Uniform Interrogatories and Requests for Production of Documents. Wagner timely responded to the discovery requests fully, completely and accurately to the best of her ability given the nature of the requests.

Pritchard's counsel, Jess, thereafter objected to Wagner's responses. Jess claims the responses are unresponsive and equate to no response at all. Jess engaged in several conversations (emails) with the undersigned ostensibly to address the alleged

deficiencies and resolve the differences prior to seeking court intervention. However, in the conversations, Jess refused to identify exactly how Wagner's responses were deficient and exactly which responses were claimed to be deficient. Instead, Jess pulled a discovery request and response from a totally unrelated case as an "example" of how Jess wanted Wagner to respond. Unlike Jess' requests to Wagner, the example request was clear, concise and stated what information was being sought given a certain set of facts.

The undersigned responded to Jess' demands stating that Wagner's responses were clear and complete responses. Further, the undersigned offered to consider and revise the responses if Jess would clarify his questions and refrain from using boilerplate requests demanding "all" information that "ever" existed under "any and all" circumstances or conditions. Jess refused to identify the exact responses that were alleged to be deficient or to refine the requests to identify what information was being sought.

Wagner has been forced to endure two depositions and no less than five separate rounds of written discovery in three separate lawsuits, all at the instigation of Pritchard. Additionally, she has fulfilled her obligations to disclose information related to the upcoming trial in a timely and concise manner. Pritchard, on the other hand, has engaged in abusive and harassing trial tactics and has filed pleadings designed to cause Wagner to suffer unwarranted expenses and added stress. In addition to the lawsuits, Pritchard has attacked Wagner's ability to continue in her chosen profession and has filed false complaints and allegations with regulatory agencies and taxing authorities. Pritchard and Jess' filing of the instant Motion to Compel seeking sanctions against Wagner and the undersigned for alleged deficiencies in responses to information being sought for the third time is designed to further harass Wagner and to cause her to suffer further financial problems.

Under these circumstances, Wagner respectfully requests that the Court deny Pritchard's Motion to Compel in its entirety; to compel Pritchard to either identify

which responses to his requests are deficient; to allow Wagner additional time to supplement her responses, if warranted and to award Wagner her attorney fees and expenses incurred in responding to Pritchard's baseless and unwarranted Motion to Compel.

Dated: <u>September 19, 2014.</u>

**ZEIGLER LAW GROUP, PLC**

<u>/s/  012427  J. Murray Zeigler</u>
Attorney for Debtor/Defendant

On September 19, 2014, I served the foregoing document described as DEBTOR'S RESPONSE TO PLAINTIFF'S MOTION FOR AN ORDER COMPELLING DISCOVERY AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37 on the following individuals by electronic means through the Court's ECF program:

SCOTT R. GOLDBERG, ESQ.
CODY J. JESS, ESQ.
ecfdocket@swazlaw.com
cjess@swazlaw.com

U.S. TRUSTEE
USTPRegion14.PX.ECF@USDOJ.GOV

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

<u>/s/  012427  J. Murray Zeigler</u>

In re Wagner          Response to Motion to Compel - 17          Case No. 2-13-bk-19796-MCW
Adversary No. 2-14-ap-00149-MCW

Case 2:14-ap-00149-MCW    Doc 30    Filed 09/19/14    Entered 09/19/14 19:49:09    Desc
Main Document    Page 17 of 17